1  Douglas A. Applegate (SBN 142000)
   George M. Lee (SBN 172982)
2  **SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
   101 Montgomery Street, 27th Floor
3  San Francisco, California  94104
   Phone:  (415) 979-0500
4  Fax:      (415) 979-0511

5  Attorneys for Plaintiff
   Ivy Rosequist, individually and dba
6  Wicker-Wicker-Wicker

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 IVY ROSEQUIST, individually and doing        Case No.:  CV 08-1588 SBA
   business as WICKER-WICKER-WICKER
12                                               **DECLARATION OF WILLIAM**
                 Plaintiff                       **GIFFEN IN SUPPORT OF MOTION**
13                                               **FOR SUBSTITUTION OF PARTY**
        vs.
14                                               **[FRCP 25(a)(1)]**
   MICHAEL TAYLOR DESIGNS, INC., a
15 California Corporation                        Date:      October 7, 2008
                                                 Time:      1:00 p.m.
16               Defendant                       Ctrm:      Three, 3rd Floor
                                                 Judge:     Hon. Saundra B. Armstrong
17

18 _____

19 AND RELATED COUNTER-CLAIMS

20

21     I, William Giffen, declare as follows:

22     1.     The name of the decedent is Ivadale V. Rosequist.

23     2.     Plaintiff Ivadale V. Rosequist ("Ivy Rosequist") commenced this action,

24 individually and doing business as Wicker-Wicker-Wicker on March 24, 2008 by filing the

25 original complaint in this action.

26     3.     On May 29, 2008, plaintiff Ivy Rosequist died at Sequoia Hospital located at 170

27 Alameda De Las Pulgas in San Mateo County.  A true and correct copy of her death certificate is

28 attached to this declaration as **Exhibit A**.

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

1

4.      No proceeding is now pending in California for administration of the decedent's estate.

5.      On August 28, 2008, however, I filed a petition in the Probate Division of the San Mateo Superior Court for declaratory relief as to whether the decedent's furniture design business and the associated intellectual property rights that are the subject of this action are assets of the Ivy Rosequist Trust or assets of her estate.

6.      Whether or not the assets are determined to be property of the trust or property of the estate I am still the decedent's successor in interest, as defined in Rule 25(a)(1) of the Federal Rules of Civil Procedure, and succeeded to the decedent's interest in the action.

7.      Upon Ms. Rosequist's death, I became the sole trustee of the Trust created by the Ivy Rosequist Trust Agreement dated November 13, 2006, by Ivadale V. Rosequist as Trustor. A true and correct copy of the Ivy Rosequist Trust is attached hereto as **Exhibit B**.

8.      Thus, if it is determined that the assets were in fact property of the trust then I am the successor in interest as the Trustee of the Ivy Rosequist Trust.

9.      Likewise, I am also the successor in interest in an individual capacity as the sole beneficiary of the trust property given that the time for distribution of the trust property passed 60 days after the decedent's death.

10.      I am also the appointed Executor of the decedent's will.  A true and correct copy of Ivadale V. Rosequist's Last Will and Testament is attached hereto as **Exhibit C**.  As the executor or personal representative of the decedent's estate, I am also the proper party for substitution pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, and succeeded to the decedent's interest in the action.

11.      Moreover, since the pour over will bequests her entire estate to the Trustee of the Ivy Rosequist Trust, I am also the sole beneficiary of Ivadale V. Rosequist's estate.

12.      Thus, even if it is determined that the decedent's furniture design business and associated intellectual property that are the subject of this action are assets of her estate instead of her trust, I am still the proper party for substitution as the executor and will ultimately succeeded to the decedent's interest in the action as the Trustee once the will is probated and the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

2

assets are distributed to me as Trustee, and then to me individually, as the sole beneficiary of the Ivy Rosequist Trust.

13.    No other person has a superior right to be substituted for the decedent in the pending action.

14.    I have personal knowledge of the matters contained in this declaration and, if called as a witness to testify, I could and would competently testify to them.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 28th day of August, 2008 in San Francisco, California.

_William Giffen_

William Giffen

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

DECLARATION OF WILLIAM GIFFEN IN SUPPORT OF MOTION FOR SUBSTITUTION OF PARTY

# EXHIBIT A

# CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN MATEO
## HEALTH DEPARTMENT
### SAN MATEO, CALIFORNIA

CERTIFICATE OF DEATH

3200841001946

USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS

**STATE FILE NUMBER** | **LOCAL REGISTRATION NUMBER**

### DECEDENT'S PERSONAL DATA

| 1. NAME OF DECEDENT — FIRST (Given) | 2. MIDDLE | 3. LAST (Family) | | 6. SEX |
|---|---|---|---|---|
| IVADALE | VICTORIA | ROSEQUIST | | F |

AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days / Hours | IF UNDER 1 HOUR Minutes |
|---|---|---|---|
| 09/12/1934 | 73 | | |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 9. HOUR (24 Hours) |
|---|---|---|---|---|---|
| MN | 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 | YES [X] NO UNK | DIVORCED | 05/29/2008 | 0215 |

| 13. EDUCATION — Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? If yes, see worksheet on back | 16. DECEDENT'S RACE — Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| HS GRADUATE | YES [X] NO | CAUCASIAN |

| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| DESIGNER | HOME FURNISHINGS | 45 |

### USUAL RESIDENCE

| 20. DECEDENT'S RESIDENCE (Street and number or location) |
|---|
| 8320 CABRILLO HIGHWAY |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| MONTARA | SAN MATEO | 94037 | 39 | CA |

### INFORMANT

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, ZIP) |
|---|---|
| WILLIAM GIFFEN, FRIEND | P.O. BOX 410507, SAN FRANCISCO, CA 94141 |

### SPOUSE AND PARENT INFORMATION

| 28. NAME OF SURVIVING SPOUSE — FIRST | 29. MIDDLE | 30. LAST (Maiden Name) | |
|---|---|---|---|
| | | | |

| 31. NAME OF FATHER — FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| JOHN | | ROSEQUIST | SWEDEN |

| 35. NAME OF MOTHER — FIRST | 36. MIDDLE | 37. LAST (Maiden) | 38. BIRTH STATE |
|---|---|---|---|
| INGRID | | NELSON | SWEDEN |

### FUNERAL DIRECTOR / LOCAL REGISTRAR

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION RESIDENCE OF FRIEND WILLIAM GIFFIN | |
|---|---|---|
| 06/02/2008 | 8320 CABRILLO HIGHWAY, MONTARA, CA 94037 | |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CR/RES | NOT EMBALMED | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| CRIPPEN & FLYNN WOODSIDE CHAPEL | FD879 | SCOTT MORROW, MD | 05/30/2008 |

### PLACE OF DEATH

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| SEQUOIA HOSPITAL | [X] IP / ER/OP / DOA | Nursing Home/LTC / Residence / Hospice / Other |

| 105. COUNTY | 106. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number or location) | 104. CITY |
|---|---|---|
| SAN MATEO | 170 ALAMEDA DE LAS PULGAS | REDWOOD CITY |

### CAUSE OF DEATH

| 107. CAUSE OF DEATH | Enter the chain of events — diseases, injuries, or complications — that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) | CONGESTIVE HEART FAILURE | DAYS | YES [X] NO |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) last (B) | CRITICAL AORTIC STENOSIS | MTHS | 109. BIOPSY PERFORMED? YES [X] NO |
| (C) | | | 110. AUTOPSY PERFORMED? YES [X] NO |
| (D) | | | 111. USED IN DETERMINING CAUSE? YES NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NONE | YES [X] NO UNK |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) |
|---|
| NO |

### PHYSICIAN'S CERTIFICATION

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| | VINEET KAPUR M.D. | A68823 | 05/30/2008 |

| Decedent Attended Since | Decedent Last Seen Alive | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|---|---|
| 05/28/2008 mm/dd/ccyy | 05/29/2008 mm/dd/ccyy | VINEET KAPUR M.D. 170 ALAMEDA DE LAS PULGAS, REDWOOD CITY, CA 94062 |

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| Natural / Accident / Homicide / Suicide / Pending Investigation / Could not be determined | YES NO UNK | | |

### CORONER'S USE ONLY

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|
| |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| |

| 125. LOCATION OF INJURY (Street and number or location, and city, and ZIP) |
|---|
| |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 137. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| | | |

### STATE REGISTRAR

| A | B | C | D | E | | FAX AUTH. # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | "012008000828351" | | |

CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF SAN MATEO } SS

DATE ISSUED

**JUN 0 3 2008**

This is a true and exact reproduction of the document officially registered and placed on file in the office of the SAN MATEO COUNTY HEALTH DEPARTMENT.

SCOTT MORROW, M.D.
HEALTH OFFICER AND REGISTRAR

000537081

This copy not valid unless prepared on engraved border displaying seal and signature of County Health Officer.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



# EXHIBIT B

CLIENT'S COPY

## TRUST AGREEMENT

THIS TRUST AGREEMENT is entered into by IVEDALE V. ROSEQUIST, also known as IVY ROSEQUIST (currently of San Mateo County, California) as Trustor and Trustee.

WHEREAS, the Trustor is desirous of creating a trust to be known as the

### IVY ROSEQUIST TRUST

the provisions of which are hereinafter stated;

NOW, THEREFORE, this Trust Agreement made and entered into by the aforementioned party,

### WITNESSETH

### Article I

The Trustor hereby delivers and transfers to the Trustee all of the property listed on Schedule "A," attached hereto and by this reference made a part hereof, receipt of which is hereby acknowledged by the Trustee, which amount, together with any property which hereafter may become subject to the trust, shall constitute the trust property and is hereinafter referred to as the trust estate. Said property is simply being transferred to the trust to facilitate the administration of the same and to avoid probate.

### Article II

The Trustee may at any time during the pendency of this trust receive other property, real and personal, from the Trustor or

1

from any person or persons.  The Trustee may particularly receive such property under the will of either of the Trustor or of any other person.  Any property so received shall be held, administered, and distributed by the Trustee, subject to the terms which govern this Trust.

## Article III

The rights, powers, and duties of the Trustee with respect to the management of the trust estate shall be as follows:

A.    The Trustee is authorized to retain in the trust for such time as he/she may deem advisable any of the property received by them during the existence of this trust, whether or not of the character permitted by law for the investment of trust funds.

B.    The Trustee shall have the power, with respect to the property of the trust estate or any part thereof, and upon such terms and in such manner as the Trustee may deem advisable, to: sell, convey, exchange, convert, improve, repair, manage, and control the same; to participate in foreclosures; to lease trust property on terms within or beyond the trust, and for any purpose; to borrow money for any trust purpose and to encumber trust property or hypothecate the same by mortgage, deed of trust, pledge, or otherwise; to carry insurance, at the expense of the trust, of such kinds and in such amounts as the Trustee may deem advisable; to commence, defend, settle, or compromise such litigation with respect to the trust, or any property of the trust estate, at the expense of the trust, as the Trustee may deem advisable; to invest and reinvest the trust funds in such properties as the Trustee may deem advisable (including non income-producing properties), whether or not of the character permitted by law for the investment of trust funds; and, with respect to securities held in the trust:  to vote, give proxies, and pay assessments or other charges; to participate in reorganizations, consolidations, mergers, and liquidations, and, incident thereto, to deposit securities with (and transfer title to) any protective or other committee upon such terms as the Trustee may deem advisable, and to exercise or sell stock subscriptions or conversion rights; and to abandon any property or interest in property belonging to any trust created pursuant to this Trust Agreement when in the Trustee's discretion, such

2

abandonment is in the best interest of the trusts created
hereunder and of the beneficiaries of the same.

In addition, the Trustee shall have the power to make
such loans to the Trustor's issue (in such amounts and for such
terms) as the Trustee deems necessary or desirable; provided,
however, that any such loan shall be evidenced by an interest-
bearing Promissory Note and shall be secured. Any such Note shall
bear interest at a rate not more than one-quarter of one percent
(1/4%) below that the Trustee could obtain on a FDIC insured
$100,000 one-year certificate of deposit at a reputable northern
California savings and loan association at the time the loan is
made. No Trustee of this trust shall have any power to make any
such loan to himself/herself hereunder without the specific prior
written consent of either the Trustor or the other Trustee(s), if
at the time of the loan there is more than one Trustee of this
trust. If the Trustee is the sole Trustee of this trust, he/she
shall not have any power to make any such loan to himself/herself
hereunder without the specific prior written consent of the
Trustor. The total of all loans outstanding to any given issue of
the Trustor at any one time shall not exceed thirty percent (30%)
of the trust principal at the time any such loan is made.

In addition, the Trustee shall be authorized to: (i)
purchase assets from, (ii) sell assets at net fair market value
to, (iii) borrow money from, or (iv) loan money (with adequate
security and interest) to: (a) the estate of the Trustor, (b) the
issue of the Trustor, (c) any other trust established by the
Trustor, or (d) engage in such transaction between the separate
trusts established hereunder. The terms of such transaction shall
be solely within the reasonable discretion of the Trustee and the
Trustee shall incur no liability with regard thereto.

In addition to the foregoing powers listed, the Trustee
shall have such further powers as may now or hereafter be
conferred upon the Trustee by law (specifically including those
contained in California Probate Code sections 16220, et seq.) and
such additional powers as may be necessary to enable the Trustee
to administer this trust in a reasonable business-like manner in
accordance with the provisions and intentions of this Trust
Agreement as a whole.

C.   The Trustee may hold securities or other property of the
trust estate in his/her name as Trustee hereunder, or in the name
of the Trustee's nominee, or the nominee of a custodian selected
by the Trustee; or, with regard to real property, by means of any
holding agreement which may be executed by and between the Trustee
and a title insurance company, bank, trust company, or other
appropriate corporation or person of the Trustee's choice. The

3

Trustee may hold securities as above-stated or unregistered in such condition that ownership will pass by delivery.

D.    All taxes, assessments, fees, charges, and other expenses incurred by the Trustee in the administration or protection of this trust, including any compensation of the Trustee, the Trustee's attorney, the Trustee's accountant, or other agents employed by the Trustee, shall be paid by the Trustee in full out of the principal or in full out of the income of the trust estate, or partially out of each of them, in such manner and proportions as the Trustee, in his or her free and absolute discretion, may determine to be advisable prior to the final distribution of the trust estate.

E.    The Trustee shall not be liable in any way for any neglect, omission, misconduct, or default of any attorney, accountant, or other agent employed by the Trustee.

F.    All matters relating to principal and income shall be governed by the provisions of the California Principal and Interest Law as the same shall from time to time be in effect, except that the Trustee shall always have the power to:

1.    credit to principal distributions by mutual funds and similar entities all gains from the sale or the disposition of property;

2.    charge to income from time to time a reasonable amortization reserve for all intangible property having a limited economic life (including, but not limited to, patents and copyrights); and

3.    amortize all premiums paid and discounts received in connection with the purchase of any bond or any other obligation by making an appropriate charge or credit to income as the case may be.

G.    Upon any division of the property of the trust estate, or partial or final distribution thereof as herein provided, the Trustee may divide or distribute such property in kind (including undivided interests therein) or, in the Trustee's free and absolute discretion, the Trustee may sell all or any part of such property to make such division or distribution partly in cash and partly in kind; and the decision of the Trustee as to what constitutes a proper division of the trust estate, either prior to or upon any distribution thereof, shall be binding upon all persons interested in this trust.

4

H.   In the event that this trust is ever administered by more than one Trustee, the Trustees may, by mutual agreement, designate either one or both of themselves to exercise any or all of the powers granted them hereunder and to otherwise act on behalf of, and in the name of, the trust without requiring the specific concurrence of the other Trustee in the exercise of such designated powers or the undertaking of the designated act(s). The initial Trustee may, in particular, delegate such authority to one another and may do so (in appropriate cases, as in dealing with banks, stockbrokers and other like financial institutions) by simply opening trust accounts in their names as joint owners and designating on the documents establishing the account that either Trustee may act alone with respect to the account in question.

I.   The Trustee may hire professional investment counsel (such as a bank, stock brokerage house, a reputable financial planner or other like financial advisor or institution) to consult with respect to the management and investment of the trust estate and/or to act as custodian of any or all trust assets, and the Trustee may further delegate the Trustee's management and/or investment duties under this Trust Agreement to any such reasonable investment counsel or financial institution.

In addition the Trustee may, by written delegation, delegate any or all of the Trustee's management and/or investment duties under this Trust Agreement (but not any of the Trustee's distributive powers) to any one or more of the Trustor's issue, for such period and upon such terms as the Trustee may stipulate.

J.   The Trustee is authorized to carry insurance of such kinds and in such amounts as the Trustee, in the exercise of his/her free and absolute discretion, consider advisable (at the expense of the Trust) to protect the trust estate, the Trustee or any beneficiary of the trust estate against any hazard reasonably expected.   The Trustee may, for example, use trust funds to purchase health insurance for the benefit of any beneficiary for whose health trust funds may properly be expended.

K.   The Trustee is vested with the power and authority to open, operate, and maintain a securities brokerage account wherein any securities may be bought and/or sold on margin; and to hypothecate, borrow upon, purchase, and/or sell existing securities in such account as the Trustee may deem appropriate or useful.

L.   The Trustee is vested with the power and authority to write, buy, and/or sell options (whether covered or not) on any security held by the trust and/or regularly traded on a recognized securities exchange.

5

M.   The Trustee is vested with the right to make gifts and/or transfers for the purposes of Medi-Cal or other government benefits planning to the beneficiaries (including the trustee herself), of the Trust, in the same proportions as set forth therein. Gifts and/or transfers may be made to spouses and children of the beneficiaries in the same proportions or less in the discretion of the agent.

N. The trustee is also vested with the power to designate a power of attorney to handle the matters of this trust.

### Article IV

The Trustee shall apply and distribute the trust estate and the income therefrom in the following manner:

A.   During the lifetime of the Trustor, the Trustee shall in quarterly or more frequent installments pay to, or apply for the benefit of, the Trustor the entire net income from the trust estate and so much of the principal of the trust estate, up to the whole thereof, as either: (i) the Trustee determines the Trustor needs for his/her health, comfort, welfare, maintenance, education and/or support; or (ii) the Trustor may request.

B.   Upon the death of the Trustor, the Trustee shall pay all of the deceased Trustor's just debts (not legally barred); any local, federal or state taxes that may be due as a result of the Trustor's death including death, income, property or other taxes due; the Trustor's last illness and funeral expenses; and the expenses of administering the deceased Trustor's estate.

With respect to the payment of debts, if the estate of the Trustor (or any portion of it) is subject to administration, then any claims that could have been made against the deceased

6

Trustor's probate estate shall be considered barred for the purposes of this trust if they were not so made in a timely fashion against the probate estate and are considered barred against the probate estate at the time presented to the Trustee.

C.    Upon the death of the Trustor, the Trustee shall distribute the deceased Trustor's personal effects in accordance with the directives contained in a letter of instructions which the Trustor may address to the Trustee. Said letter may be written either before or after this Trust Agreement is executed and may be changed from time to time in the future. The Trustee should follow the directives contained in the last such letter written prior to the Trustor's death.

As to any personal effects remaining in the trust estate after the Trustee makes the distributions requested, the Trustor hereby directs the Trustee to dispose of such items in such manner as the Trustee deems best (including keeping such of the same as the Trustee may wish for himself/herself).

To the extent that the Trustor's aforesaid letter directs the Trustee to distribute personal effects to persons residing outside the immediate area of the Trustor's final residence, the Trustee shall arrange for the shipping of such items to such persons and pay all reasonable charges incurred in connection therewith as an expense of administration.

D.   Upon the death of the Trustor, the entire trust estate shall be distributed to William Giffen, provides he survives trustor.  If not, then as follows:

1. A life estate in the real property located at 8322 Cabrillo Highway, Montara, CA 94037 shall be distributed to Ron Mann, as long as he resides in the residence. If he moves from the residence or no longer resides there for any reason for a period of more than six (6) months, the life estate shall terminate.

2. The residue of the life estate and the balance of the trust estate as follows:

a. $100,000.00 to Margaret Larson, or her estate if deceased;

b.   $50,000.00 to Gloria Hanson, Lyle Rosequist John Rosequist, Bruce Nelson, or the estate of any of these beneficiaries who predecease trustor and

c. The balance of the trust estate to Marjorie McGee.

E.   Any gift or devise hereunder to any beneficiary who is under the age of twenty five (25) years at the time such gift to said beneficiary vests, shall thereafter be held, administered and distributed as follows:

1.   The Trustee shall pay to, or apply for the benefit of, the beneficiary of each such share so much of the net income and/or principal of the beneficiary's share of the trust estate (up to the whole thereof) as the Trustee, in the exercise of the Trustee's free and absolute discretion, deems necessary or

8

desirable for the health, education, comfort, maintenance, support and/or start in life of such beneficiary.

2.    In the event any minor beneficiary of any trust herein created shall be residing with a guardian who is not the parent of such minor beneficiary, then the Trustee's authority to make payments for such minor beneficiary's support and maintenance shall be deemed to include the authority to reimburse such guardian for the cost of providing room and board, including the reasonable cost of providing suitable accommodations for such minor beneficiary, to the extent the Trustee deems the same to be reasonable.

3.    Upon the twenty-fifth (25th) birthday of each beneficiary (or as soon thereafter as is reasonably possible), the Trustee shall distribute, outright and free of trust, the then remaining balance of the trust share then held by the Trustee for such beneficiary.

4.    Should any beneficiary of any such share die during the pendency of the trust for his or her benefit leaving issue surviving, then the share of such beneficiary shall be divided by right of representation into so many representative subshares as the said deceased beneficiary has left issue surviving; and appropriate representative subshares shall thereafter continue to be held in trust by the Trustee for the benefit of such issue, upon the same terms and conditions with regard to the trust share for the Trustor's issue.

9

5.    Should any beneficiary of such a share die during the pendency of the trust for his or her benefit without leaving issue surviving, then the share of such beneficiary shall be added to the shares of his/her siblings hereunder (or of their issue, or the survivor(s) of them, as the case may be), if any, in the same proportions which said shares or subshares bore to each other at the time they were initially created; and should there be no such siblings (or siblings' issue), then the share of such beneficiary shall be divided among the remaining living issue (beneficiaries listed herein above) by right of representation and continue to be held for their benefit, or distributed to them (as the case may be) in accordance with the provisions of this Trust Agreement.

The Trustee is hereby empowered to resolve, in the exercise of the Trustee's reasonable discretion, any dispute that may arise with regard to any division pursuant to this provision.

Should any of the share or subshares made contingent beneficiaries hereunder be distributed at the time of the distribution herein provided, then the distribution herein provided shall be made directly to the distributee of such share or subshare (or to his or her guardian, heirs, or legatees, as the case may be).

F.    If all of the above beneficiaries named herein die at any time during the pendency of this trust, the entire trust estate shall be distributed to the heirs-at-law of Ivy Rosequist pursuant to California intestate succession laws.

10

G.   Any beneficiary hereof who is entitled to receive a distribution from the trust estate upon the death of another must actually survive the designated individual by sixty (60) days; otherwise, said beneficiary shall be deemed to have predeceased said individual for purposes of distribution hereunder.

H.   Anything   contained   herein   to   the   contrary notwithstanding, at the time appointed hereunder for distribution of any property of the Trust, the Trustee may withhold from distribution, without the payment of interest, any part, or all, of such property, as long as the Trustee shall determine (in the exercise of the Trustee's reasonable discretion) that such property may be subject to conflicting claims, to tax deficiencies or tax liabilities, contingent or otherwise, properly incurred in the administration of the trust estate.

I.   Each of the trusts (and shares thereof) created by or pursuant to the terms of this agreement shall for all purposes be considered as separate trusts. The Trustee is hereby authorized, however, to hold and administer assets of the trust herein created as a single unit for purposes of convenience.

If by the terms of this Trust Agreement any beneficiary shall become beneficially interested in more than one share of this trust, then and in that event all such shares of the trust shall (to the extent of his/her interest therein) be combined and administered as a single share of the trust.

11

## Article V

A.   No beneficiary of this trust shall have any right to alienate, encumber, or hypothecate his or her interest in the principal or income of the trust in any manner; _provided, however,_ that such transactions shall be permissible with the written consent of the Trustee, which consent may be given if the Trustee (in the exercise of the Trustee's free and absolute discretion) determines that such a transaction would be beneficial to the respective beneficiary and not have a serious adverse effect on the interest of any other beneficiary of the trust.  The Trustee shall not be under any obligation whatsoever to consent to any such transaction and need not justify any refusal to do so.

The interest of any beneficiary in principal or income of the trust shall not in any manner be subject to claims of his or her creditors, liable to attachment, or execution, or to any other such processes of law, including bankruptcy proceedings; and, in the event that any creditor shall attempt to attach, garnishee or sequestrate any such interest, the Trustee, so long as said effort on the part of such creditor continues, shall, instead of paying the principal or income due hereunder to said beneficiary, apply the same for his health, support, maintenance and/or education.

B.   If, during the period when any beneficiary is entitled to receive any payment hereunder, such beneficiary is, in the uncontrolled judgment of the Trustee, mentally or physically incapacitated (irrespective of whether legally so adjudicated),

12

incompetent, placed under conservatorship or in bankruptcy, the Trustee may apply any such payments for the benefit of such beneficiary rather than distributing the same to him/her directly.

<u>Article VI</u>

Should any trust beneficiary, other than the Trustor, no matter how remote or contingent such beneficiary's interest may appear, or any other legal heir of the Trustor, or any person claiming under any of them:

A.    Contest the provisions of this Trust Agreement, or attack or seek to impair or invalidate any of its provisions, or conspire with or voluntarily assist anyone attempting to do any of those things; and/or

B.    Without the consent of the Trustee:  petition to terminate the trust created for such beneficiary for any reason whatsoever prior to the prescribed termination date of said person's trust (if any) as set forth in this Trust Agreement, other than to terminate said trust for the reason(s) set forth in California Probate Code Section 15408; and/or

C.    Commence any proceeding in law, equity or arbitration to claim a right to support (whether or not said claim is based upon contract, equity and/or a filed creditors' claim) by reason of said claimant's relationship with the Trustor unless the claimant has been explicitly granted a right to support hereunder; and/or

13

D.    Commence any proceeding to challenge the legality of this Trust Agreement or any trust created hereunder for any reason whatsoever (including, without limitation, any allegations that said Trust Agreement or any trust created hereunder violates or could violate the so-called "rule against perpetuities" and/or that the Trustor was incompetent or acting under undue influence at the time that this Trust Agreement, or any amendment thereto, was executed);

--then in any such event such person shall not be entitled to any interest in any trust created hereunder; and all benefits, if any, provided for such person under this Trust Agreement shall be forfeited and shall augment proportionately the shares of such of the other trust beneficiaries hereunder as shall not have participated in such acts or proceedings.

### Article VII

A.    The Trustee shall from time to time, but no less often than annually, account to the then principal income beneficiary(ies) of the trust; provided, however, that during the lifetime of the Trustor:  (i) the Trustee(s) need not account at all if the Trustor and the Trustee(s) are one and the same person(s); and (ii) the Trustee(s) need account only to the Trustor if the Trustor(s) and Trustee(s) are different persons (in which event the Trustor's written approval shall be final and conclusive in respect to transactions disclosed in the account as

14

to all beneficiaries of this trust, including unborn and contingent beneficiaries).

The sending of regular bank and/or stockbroker's statements shall be considered an accounting within the meaning of this provision.

B.    The Trustee and any successor Trustee(s) shall be entitled to reasonable compensation for their services.

C.    No bond shall be required of any person named in this instrument as a Trustee hereof.

D.    No Trustee designated herein shall be liable to any beneficiary or any heir of either Trustor for the Trustee's acts or failure to act, except for willful misconduct or gross negligence.

E.    Until a Trustee receives written notice of any birth, marriage, death or other event upon which the right to payment(s) from any trust created hereunder may depend, the Trustee shall incur no liability to persons whose interest may have been affected by that event for disbursements made in good faith.

F.    No Co-Trustee shall be liable or responsible for any act, omission, or default of any other Co-Trustee, provided that he shall have had no knowledge of facts that might reasonably be expected to put her on notice of the offending act, omission, or default of the other Co-Trustee.

## Article VIII

A.    If the initial Trustee named herein is unable or unwilling to serve, then William Giffen shall act as sole Trustee hereof. If he is unable or unwilling to serve, then Kathleen A. Brewington shall act as sole Trustee hereof.

Should the initial Trustor and his/her successor(s) designated herein be unable or unwilling to serve, then the successor shall be selected as follows:

Upon qualifying as Trustee, the initial Trustee (and any successor Trustee[s]) shall appoint in writing a successor Trustee who, upon the death, resignation, or inability to serve of both the appointing Trustee and any successor Trustee(s) specifically designated herein, shall become Trustee in the appointing Trustee's stead.    For said purpose, the Trustee may appoint several persons who shall serve in the order designated by the Trustee. The same power to appoint a successor Trustee is hereby vested in any successor Trustee. As soon as a successor Trustee has started to serve, the appointments made by said Trustee's predecessor, except said Trustee's own appointment, shall become invalid, and it shall be up to the successor Trustee to make new appointments of successor Trustees. Any Trustee having designated his successor in writing shall have the power to revoke any such designation in writing at any time before the appointing Trustee's office as Trustee has terminated.

16

Any such appointment or revocation shall be executed in so many original copies as shall be necessary to deliver one to each of the then income beneficiaries of the trust and to keep one with each of the original copies of the Declaration of Trust. Failure of the Trustee to comply with the requirement stated in this subparagraph, however, shall not affect the validity of the appointment or revocation in question.

If, in spite of the foregoing provisions, there should be a vacancy in the Trusteeship of this trust which cannot be, or has not been, filled by an appointment as above provided, then any beneficiary of this trust shall be authorized to apply to a court of competent jurisdiction for the appointment of a successor to the Trusteeship which has been terminated.

B.    Any successor Trustee shall succeed without further act or deed to full and complete title to the property of the trust estate and to all powers, rights, discretions, obligations and immunities of the initial Trustee(s) hereunder with the same effect as though such successor had been originally named as Trustee.

C.    No successor Trustee shall be liable for any act, omission, or default of a predecessor Trustee. Unless requested in writing within ninety (90) days of appointment by an adult beneficiary of this trust, no successor Trustee shall have any duty to investigate or review any action of a predecessor Trustee and may accept the accounting records of the predecessor Trustee

17

showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in this trust.

D.    Any transfer agent or other person dealing with the Trustee(s) may rely on a written statement by the Trustee(s) that said Trustee(s) is/are the present acting Trustee(s).

E.    1.    If a Trustee wishes to resign, the resigning Trustee shall deliver a written, notarized statement of his/her intent to resign to his/her designated successor. The resignation shall become effective upon the written acceptance of the Trusteeship by the designated successor.

      2.    If a Trustee dies, the deceased Trustee's successor shall record an Affidavit of Death (with a certified copy of the deceased Trustee's death certificate attached) with the County Recorder of the county in which the trust had its principal situs at the time of the Trustee's death. Said affidavit shall attest to both the death of the Trustee and the assumption of office of his/her successor.

      3.    If a Trustee becomes incompetent or otherwise incapacitated, the successor Trustee shall record a notarized certification by a physician attesting to the Trustee's incompetence (or other inability) and declaring the successor's incumbency as successor Trustee of the trust.

## Article IX

Unless sooner terminated in accordance with other provisions of this agreement, each trust created under this agreement shall terminate twenty-one (21) years after the death of the last survivor of the following persons:  the Trustor, the Trustor's parents, all of the issue of Trustor and all of the issue of the Trustor's parents living at the time this trust becomes irrevocable.

All principal and undistributed income of any trust so terminated shall be distributed to the then income beneficiary of that trust.  If there are several persons entitled to receive the income, then the remaining principal and undistributed income shall be distributed to such income beneficiaries in the proportions in which they are, at the time of termination, entitled to receive the income.  If the rights to income are not then fixed by the terms of this Trust Agreement, distribution under this article shall be made by right of representation to such of the Trustor's issue as are then entitled to receive income payments.  If there are no such issue, then distribution hereunder shall be made in equal shares to such persons as are then entitled to receive income payments.

## Article X

A.   The term "education," as used in this agreement, shall be construed to include art, music and trade school study and apprenticeship programs, as well as college, graduate and

19

postgraduate study (not necessarily limited to the United States) so long as pursued to advantage by the beneficiary at an institution of the beneficiary's choice; and any other means of education (including travel) which seems reasonable to the Trustee. In determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related travel and living expenses to the extent that they are reasonable.

B.    The words "issue," "child" and "children" as used herein shall include legally adopted children and issue.

C.    The term "start in life" as used in this Trust Agreement shall mean the purchase of a home and/or the commencement of a career, family, occupation, or other endeavor substantially related to, or having the potential of becoming, a beneficiary's life's work.    The Trustor is aware that under certain circumstances, some or all of the Trustor's issue may reasonably have more than one "start in life" (as said term is defined hereinabove), and requests that the Trustee sympathetically consider the Trustor's issue's needs accordingly.

D.    The term "health" as used in this Trust Agreement shall include elective as well as required treatment.

E.    As used in this Trust Agreement, the masculine, feminine, and neuter genders and the singular and plural number shall each be deemed to include the others whenever the context and/or circumstances indicate or require.

20

## Article XI

A.    All questions relating to the validity and construction of this Trust Agreement and to the administration of the trust herein created shall be determined in accordance with the laws of the State of California.

B.    If any provision of this Declaration of Trust, or any amendment thereof, should be invalid, the remaining provisions shall remain in effect and be so construed as to effectuate the intents and purposes of this Declaration of Trust and any amendments thereto.

## Article XII

A.    This Trust Agreement shall be revocable and subject to amendment as long as the Trustor is alive.    Revocation shall be effected by delivering an instrument in writing to that effect from the Trustor to the Trustee.    Amendments shall be effected during the lifetime of the Trustor by an agreement in writing executed by the Trustor and delivered to the Trustee.

B.    Upon the death of the Trustor, this Trust Agreement, as then amended, shall become irrevocable and shall not be subject to further amendments.

## Article XIII

In the event that any Trustee (or any other interested party) hereunder shall at any time wish to submit this trust to the jurisdiction of an appropriate State of California Superior Court for supervision pursuant to the terms and provisions of section

21

KATHY BREWINGTON          831 459 9926          11/13/06  06:35am  P. 022

17000, et seq. of the California Probate Code (or any of them, or their successors) the Trustee, or interested party, may do so forthwith.

THIS TRUST AGREEMENT has been executed in triplicate. The original copies hereof have been designated as the "First Original," "Second Original," and "Third Original" and delivered to the Trustor, the Trustee, and the Trustor's attorney, KATHLEEN A. BREWINGTON (currently of Santa Cruz, California), respectively.

IN WITNESS WHEREOF, I have executed this instrument at REDWOOD CITY ___, California, on this 13 day of November, 2006.

Ivydale V. Rosequist
Trustor/Trustee

22

State of California      )
                         )
County of Sn Mateo       )

    On November 13, 2006, before me, Sandra K Weeks
_____ the undersigned notary public, personally
appeared Ivedale V. Rosequist and proved to me on the basis of
satisfactory evidence to be the person whose name is subscribed
to the within instrument and acknowledged to me that she
executed the same in her authorized capacity, and that by her
signature on the instrument the person or the entity upon behalf
of which the person acted executed the instrument.

    WITNESS my hand and official seal.

                                    Sandra K Weeks
                                    Notary Public

SONDRA K. WEEKS
Commission # 1619931
Notary Public - California
Santa Clara County
My Comm. Expires Nov 8, 2009

KATHY BREWINGTON          831 459 9826          11/13/06  05:35am  P. 024

## SCHEDULE A
### (TRANSFER OF ASSETS)

I hereby grant, transfer and convey to the Trustee of the IVY ROSEQUIST TRUST, all of my right, title and interest in and to all jewelry, objects d'art, clothing, household furniture and furnishings, automobiles, and all other personal effects; and all other real and personal property that I own now or acquire later during my lifetime; including, but not limited to, my real property located at and commonly known as: 8322 Cabrillo Hwy., Montara, CA 94037; and all cash, bank accounts, safe deposit boxes, stocks and bonds, general and limited partnership interests, promissory notes and trust deeds payable to me (or my interest in any such property) together with any insurance on such property.

This transfer of assets shall be binding and effective as to my heirs and assigns.

I hereby agree to sign such documents and take such actions as are necessary to effectuate the aforesaid transfer as a matter of public record (e.g., the recording of real estate deeds in the county recorder's office).

Executed this  13  day of November, 2006, at REDWOOD CITY, California.

_____
Ivydale V. Rosequist
Trustor


In my capacity as Trustee of the IVY ROSEQUIST TRUST, I hereby accept transfer and delivery of the above-stated assets.

Executed this  13  day of November, 2006, at REDWOOD CITY, California.

_____
Ivydale V. Rosequist
Trustee

24

# EXHIBIT C

CLIENT'S COPY

## LAST WILL AND TESTAMENT

### OF

### IVEDALE V. ROSEQUIST

I, Ivedale V. Rosequist, also known as Ivy Rosequist, a resident of the County of San Mateo, State of California, hereby make and declare this to be my Last Will and Testament and revoke all other Wills and Codicils previously made by me.

FIRST: I am not now married. I was previously married to Ron Rosequist which marriage ended in divorce in  1982  in SANMATEO county.

I have no children living or deceased.

The terms "issue," "child," and "children" as used in this will include any children hereafter born to or adopted by me or my issue.

All references in this Will to my "Personal Representative" shall refer to the person named as Executor hereof.

SECOND: I hereby give my entire estate of whatsoever kind and character and wheresoever situated to the Trustee of the IVY ROSEQUIST TRUST to be held, administered and distributed by said Trustee in accordance with the terms and provisions then governing said trust.

THIRD: Except as otherwise provided in this Will (and the aforementioned IVY ROSEQUIST TRUST), I have intentionally omitted to provide for any of my heirs at law living at the time of my

Page 1 of  3

death and/or for any other person.

FOURTH: Should anyone contest this Will in any way, he or she shall receive One Dollar ($1.00), and no more, in lieu of any other interest in or share of my estate.

FIFTH: I hereby appoint WILLIAM GIFFEN as Executor of this Will. Should he be or become unable or unwilling to serve, then I hereby appoint KATHLEEN A. BREWINGTON as Executor hereof.

No bond or other security shall be required of any person appointed as my Personal Representative herein.

I authorize my Personal Representative to sell at either public or private sale (and to encumber or lease) any property belonging to my estate, either with or without notice, subject only to such confirmation by court order as may be required by law.

I further authorize my Personal Representative to hold, manage, and operate any such property.

SIXTH:    I have not entered into either a contract to make wills or a contract not to revoke wills.

THIS WILL was signed by me at REDWOOD CITY, SAN MATEO CO, California, on the  13  day of November, 2006.

Ivydale V. Rosequist

The foregoing Will, consisting of three (3) pages was at the date hereof, by Ivedale V. Rosequist signed as and declared to be her Will in the presence of us who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses hereto. Each of us is now more than 18 years of age, a competent witness and resident at the address set forth after his/her name.

We are acquainted with Ivedale V. Rosequist. She is over the age of 18 years; and to the best of our knowledge, she is of sound mind and is not acting under duress, menace, fraud, misrepresentation, or undue influence.

We declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on the ___13___ day of November, 2006, at REDWOOD CITY , California.

_Helen D. Nichols_                    _Kelly Connell_

Printed Name:                         Printed Name:

_Helen L. Nichols_                    _Kelly Connell_
Residing in San Mateo County,         Residing in San Mateo County,
California                            California